UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SUSANNA MORGAN, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL S. ASTRUE, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:12-CV-246<br>Mattice/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 10), Defendant's Motion for Summary Judgment (Doc. 12), and Plaintiff's Response (Reply) (Doc. 14).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was thirty-nine years old at the time of the ALJ's decision (Tr. 22, 109). Plaintiff has a GED and has past work experience as a deli clerk, forklift operator, and convenience manager (Tr. 48, 130, 136, 174). Plaintiff indicated that she worked until January 2008 (Tr. 141).

Applications for Benefits

Plaintiff protectively applied for a period of disability and disability insurance benefits (DIB) on April 22, 2009, alleging she became disabled on August 18, 2003 (Tr. 14, 129).[1] After the application was denied at the initial and reconsideration levels (Tr. 80-87), Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 88-89). Following a hearing on October 15, 2010 (Tr. 26-51), the ALJ issued a decision on November 17, 2010, finding Plaintiff not disabled from August 18, 2003, her alleged disability onset date, through the decision (Tr. 11-22). The Appeals Council denied Plaintiff's request for review, finding no basis under its rules to review the ALJ's decision (Tr. 1-6). The Commissioner's final decision is ripe for review under 42 U.S.C. § 405(g).

Plaintiff initially alleged she became disabled due to schizoaffective, bipolar, being really short, irritable bowel syndrome (IBS), and a rash in the sunlight (Tr. 129). Plaintiff remains insured for DIB through June 30, 2011 (Tr. 14, 127).

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a

---

[1] Plaintiff is only contesting the decision on her application for disability insurance benefits, but the record only contains her later application for Supplemental Security Income (SSI) (Tr. 78-79, 109-111).

2

severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since August 18, 2003, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: irritable bowel syndrome; degenerative joint disease of thoracic spine; schizoaffective disorder; generalized anxiety disorder; and history of amphetamine abuse in reported remission (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except tasks that can be learned in less than 30 days involving no more than simple work-related decisions with few work place changes; no more than occasional (up to two hour) interaction with co-workers, supervisors, and the general public; and allowed opportunity for fifteen-minute breaks in morning and afternoon and thirty-minute lunch period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 10, 1971 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and

4

404.1569(a)).

   11.   The claimant has not been under a disability, as defined in the Social
         Security Act, from August 18, 2003, through the date of this decision (20
         CFR 404.1520(g)).

(Tr. 16-21).

## Issue Presented

1) Whether or not the Commissioner erred in rejecting the opinion of the Plaintiff's treating psychiatrist while claiming said physician's opinion was entitled to "great weight."

## Relevant Facts

A. <u>Medical Evidence</u>

According to Plaintiff's history, she was treated in 2004 for depression following a suicide attempt (Tr. 16). The records also indicate prior amphetamine abuse. The Plaintiff had a brief inpatient stay for medication adjustment and was released in stable condition. (Tr. 257-262). In November 2008, the Plaintiff saw a psychiatrist for reported mood swings that resulted from Plaintiff discontinuing use of her psychiatric medications. Her medication was adjusted and Plaintiff reported feeling better and sleeping better. Plaintiff has reported long-standing bowel issues. *Id.* In June 2009, Plaintiff was x-rayed and doctors found mild degenerative joint disease of the thoracic spine in the Plaintiff.

The records indicate that Dr. Newman is the Plaintiff's treating psychiatrist. Dr. Newman first treated the Plaintiff sometime prior to January 22, 2009. (Plaintiff's Memorandum at 3 (Doc. 11)) (Tr. 390-91 and 549-50). During the Plaintiff's initial visit to Dr. Newman, Dr. Newman noted that Plaintiff was "having memory problems, frequently forgetting things," and that Plaintiff also "worries that people are watching her and listening to her thoughts." Furthermore, Dr. Newman recorded that Plaintiff was sleeping "better," Plaintiff's appetite was "very good," and Plaintiff's energy was "increased." Dr. Newman also indicated that Plaintiff's

concentration was "not so good". No auditory or visual hallucinations were noted. Dr. Newman's Axis I impression was schizoaffective disorder. Dr. Newman also noted that, at admission, Plaintiff had a Global Assessment of Functioning (GAF) score of 40 (some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood). DSM-IV-TR at 34. Dr. Newman advised Plaintiff to continue her medications. At this time, Plaintiff took Trileptal and Risperdal. (Tr. 550).

Dr. Newman next saw Plaintiff on January 22, 2009. Plaintiff indicated that she was "doing okay." Auditory hallucinations decreased. Plaintiff reported that she was sleeping better, but had low energy during the day. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 549).

Plaintiff's next visit to Dr. Newman was on March, 16, 2009. Plaintiff reported that she was "not real good," Plaintiff's sleep was "not real good," and her concentration decreased. Plaintiff's energy level noted as being "pretty good". Dr. Newman advised Plaintiff to start taking Cogentin. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 548).

On May 12, 2009, Plaintiff saw Dr. Newman again .Plaintiff reported being a bit nervous lately, financial worries about her sister, occasional panic attacks, and poor sleep. Plaintiff also reported normal appetite and low concentration. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 547).

Plaintiff next saw Dr. Newman on August 27, 2009. Plaintiff reported that she was "pretty good" and that her anxiety had improved. Plaintiff reported that she had been "a little paranoid," but that it was "tolerable." Plaintiff experienced low energy and low concentration, but Plaintiff indicated that she was sleeping better. Her mood was better. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 546).

6

Plaintiff again saw Dr. Newman on October 20, 2009. Plaintiff reported that she was "doing okay." Plaintiff indicated that she had discontinued her medications for a few days, and did not sleep for any of those days, but she felt better after resuming her medication. Plaintiff reported normal appetite, low energy levels, but okay concentration. Her mood was okay as was her sleep. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 545).

On December 15, 2009, Plaintiff saw Dr. Newman again. Plaintiff reported doing "okay." Plaintiff reported visual hallucinations, and that she felt she was "being watched again." Plaintiff's energy was reported as low. Plaintiff's concentration was noted as being "okay." Her mood was okay and her affect euthymic. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 544).

Plaintiff next visited Dr. Newman on February 11, 2010. Plaintiff reported doing "okay." Plaintiff indicated that she had been a bit paranoid and that she was sleeping "too much." Plaintiff reported low energy and concentration levels. Her appetite was high and her mood okay. Medications caused no side effects and her affect was euthymic. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 543).

Plaintiff's next visit with Dr. Newman was on May 17, 2010. Plaintiff reported that she was doing "okay." Plaintiff reported that she was trying to quit smoking, but had been unsuccessful. Plaintiff indicated that she was not sleeping well, had low energy, and that her concentration "comes and goes." Her appetite was high, her mood good, and her affect euthymic. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 542)

On July 8, 2010, Plaintiff visited Dr. Newman. Plaintiff reported that she was "doing fine." Plaintiff reported that she was sleeping "too much." Plaintiff's energy was "okay."

Plaintiff's concentration decreased somewhat, but she indicated that otherwise was doing well. Her mood was okay for the most part and her affect was euthymic. Dr. Newman again assigned Plaintiff a GAF of 40. (Tr. 541).

Plaintiff last saw Dr. Newman on September 2, 2010. Plaintiff reported that she was "doing okay." Plaintiff indicated that she noticed some small changes, such as mild paranoia. Plaintiff reported that she thought people were watching her at times, and Plaintiff was worried that someone broke in and stole cat food. Plaintiff reported counting cars on the road and becoming upset if she could not count the cars. Plaintiff reported that she was still sleeping too much, but being better than she was in the past. Plaintiff indicated that her energy was "not real good," and her concentration was "not real, real good." She experienced no side effects from medications. Her mood was okay for the most part. Her affect was euthymic. Dr. Newman again assigned a GAF of 40. (Tr. 540).

On November 2, 2010, Dr. Newman completed a medical assessment form (Tr. 534-537). In the medical assessment form, Dr. Newman indicated that Plaintiff had a "good" ability to: perform activities of daily living independently and appropriately, free of supervision or direction; follow work rules; and maintain personal appearance (Tr. 536). Dr. Newman indicated that Plaintiff had "fair" ability or capacity to: interact appropriately, communicate effectively, and engage in other aspects of social functioning; deal with the public; demonstrate reliability; persist at assigned tasks; relate to supervisors and co-workers; work at a consistent pace for acceptable periods of time; and timely complete tasks commonly found in work settings (Tr. 536-537). Dr. Newman indicated that Plaintiff had "poor" ability to "deal with the stress of ordinary work" as well as a poor ability to:

8

> adapt to stressful circumstances in work or work-like settings where failure to adapt results repeated episode of deterioration or decompensation which cause patient to withdraw or to experience an exacerbation of symptoms. in which he opined that the Plaintiff could manage her benefits in her own best interest.

(Tr. 536).

Plaintiff's Testimony

In a functional report completed in October 2009, Plaintiff reported she lived in a house with her husband, although her husband is gone five days-a-week for work (Tr. 209). Plaintiff watches television, but only at night. She used to read, sew, and cook, but could no longer do those things at the time of the report. She goes out once a week and drives to the grocery store. (Tr. 217). She reported sporadically doing laundry, washing dishes, and vacuuming. She mostly eats food that can be cooked in the microwave. (Tr. 215). Plaintiff reported that she likes to stay home as much as possible. She also reported problems with her memory and concentration. (Tr. 218).

At the hearing, Plaintiff testified that she lived with her husband, but that he was gone for two or three weeks at a time (Tr. 37). She indicated that she last worked in 2008 as a census worker (Tr. 33). She left her job as a census worker because of bowel and bladder problems (Tr. 35). Plaintiff also stated she struggled to maintain her employment because she was not taking her mental health medicine, but her mental health symptoms improved once she began taking them again in 2009 (Tr. 36). She had begun taking medicine in January 2004, but stopped in March 2006 or 2007 because she was feeling "shaky" and her face and eye would twitch. She got back on the medication in 2009, and she says it helps, but that she sleeps a lot. (Tr. 34). Plaintiff testified that she sleeps about fourteen or fifteen hours a day (Tr. 35). Plaintiff testified

9

that on a typical day when she's not sleeping she cleans up around the house, takes the garbage out, and cares for her two dogs (Tr. 41). Plaintiff has also gained sixty pounds as a result of the mental medication (Tr. 36).

Plaintiff testified that her job with the Census Bureau required her to drive around in her car from house to house. Plaintiff said that she could take breaks whenever she wanted to but that it was difficult to stop while she was out, so she had to drive home to break and go to the bathroom. Plaintiff testified that she would only work a couple hours a day. (Tr. 43). Plaintiff testified that if she were to work now she would need to take a fifteen minute break once every two or three hours while on her mental medication (Tr. 45). For her bowels alone, Plaintiff stated that she would need to break at least twice a day (Tr. 46). Plaintiff testified that about four or five times a month she has a "bad day" where she will sleep all day and not get out of bed (Tr. 47).

B. Vocational Evidence

Anne Darnell testified as a vocational expert ("VE") (Tr. 47-50). At the administrative hearing, the ALJ asked the VE to assume an individual with Plaintiff's vocational profile who was limited to light work; the individual would be limited to tasks that could be learned in 30 days or less involving no more than simple work-related decisions with few workplace changes; the individual would be required to only occasionally (up to two hours a day) interact with the public, coworkers, and supervisors; and the individual would be afforded an opportunity to take a 15-minute break in the morning, a 15-minute break in the afternoon, and a 30-minute lunch break (Tr. 48). The VE testified that the individual could not perform any of Plaintiff's past work (Tr. 49). However, the individual could perform 30,000 jobs in the region as a hand inspector;

10

Case 1:12-cv-00246-HSM-WBC   Document 15   Filed 07/15/13   Page 10 of 18   PageID #: 629

4,000 jobs in the region as a surveillance system monitor; and 10,000 jobs in the region as a warehouse checker (Tr. 49).

The Plaintiff's Attorney asked the VE if there were any jobs for an individual who experienced cognitive deficiencies or mental health symptoms such that they, during an eight-hour workday, could not perform simple, unskilled tasks for one hour. The VE indicated that that hypothetical employee would not be able to perform any jobs (Tr. 50). The Attorney further asked the VE to assume that this hypothetical employee had mental or physical limitations that caused them to miss two to three days per month of work. The VE testified that there would not be any jobs that that hypothetical employee could perform (Tr. 50). If the individual would have to leave work for an hour once a week to take care of some physical problems that they have, the VE testified there would be no jobs.

<u>Analysis</u>

Plaintiff argues that the Commissioner erred in not giving controlling weight to the Plaintiff's treating physician's medical opinion. The Commissioner asserts that the ALJ "properly evaluated the medical evidence and gave appropriate weight to the treating physician's opinion". (Defendant's Memorandum at 4 (Doc. 13)). For reasons that follow, I conclude that there is substantial evidence to support the Commissioner's decision.

A treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings and is consistent with the other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); *Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856 (6th Cir. 1990). The supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the

11

opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188 (S.S.A.) *2 (1996). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ determines what weight the opinion is due based on the factors set forth in 20 C.F.R. §§ 404.1527, 416.927, including whether the opinion is supported by sufficient evidence and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). If an ALJ declines to accord controlling weight to a treating physician opinion, the ALJ must provide good, specific reasons for the weight accorded the opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This is a procedural safeguard ensuring that a claimant understands the disposition of his or her case, and that the ALJ applied the treating physician rule so as to provide meaningful judicial review of that application. *See id.* at 544-45.

The Commissioner argues controlling weight should not be given to Dr. Newman noting that it is error to give controlling weight to the opinion of a treating source if the opinion is not well-supported by the clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The

12

Commissioner goes on to argue the ALJ reasonably gave little weight to the opinion of Dr. Newman because it appeared to be based on Plaintiff's subjective allegations and because none of Plaintiff's treating physicians have opined that the claimant is disabled or that her work-related abilities are restricted in any meaningful way not accommodated by the Plaintiff's residual functional capacity (Tr. 19-20).

Plaintiff can only be found to be disabled if she is unable to do any substantial gainful activity because of a physical or mental impairment lasting for a period no less than twelve months. 20 C.F.R. 404.1527(a). Where the ALJ does not give a treating source controlling weight, as in this case, the ALJ must take into consideration several factors: (1) the examining relationship between the claimant and the treating source, (2) the treatment relationship, (3) the supportability of medical evidence to an opinion, (4) the consistency of the opinion in relation to the record, (5) the specialization of the source in the particular medical field, and (6) the other factors that may support or contradict an opinion. 20 C.F.R. 404.1527(c).

Contrary to the Plaintiff's allegations, the ALJ took into account Dr. Newman's findings and assessments as well as all other relevant evidence including the factors listed in 20 C.F.R. 404.1527(c). Nonetheless, the ALJ has found Plaintiff not disabled. The ALJ sufficiently considered and explained the weight given to Dr. Newman's opinion (Tr. 16-20). The ALJ considered that Dr. Newman treated Plaintiff from 2009-2010 (Tr. 540-50). The ALJ specifically addressed Plaintiff's symptoms of depression and anxiety:

> In terms of the claimant's alleged chronic and persistent feelings of depression or anxiety, while I do not doubt that the claimant experiences some such feelings frequently, perhaps even daily, I do not find them to be debilitating to the extent alleged and thus give these allegations only some weight. Her treatment notes show general improvement while compliant with her medications, and increased

symptoms are noted whenever she fails to take her medications as prescribed. I also note that her treating psychiatrist evaluated the claimant's abilities in 14 separate functions, concluding that she had "poor" ability only in adapting to work-related stress (Exhibit 24F). The above residual functional capacity accommodates this finding, as well as the overall assessment presented in her treatment notes, which show somewhat more social anxiety than this opinion reflects. My assessment of her symptoms as within the mild-to-moderate ranges reflects the statements in these notes that the claimant is "doing fine," has generally fair mood though decreased concentration, and is improving on medication. The above residual functional capacity accommodates these issues. I do note that her psychiatrist has recorded the claimant's Global Assessment of Functioning (GAF) score as 40, indicative of more extreme symptoms. I give this assessment only some weight because it is not consistent with the treatment notes or the opinion statement. Further, because GAF scores are not based on standardized norms and admittedly provide only a snapshot impression of an individual's psychological status, they are neither inherently reliable evaluations nor are they intended to be used as controlling evidence in a disability determination. Also, the Commissioner has previously declined to endorse the use of GAF scores in disability determinations because they are not directly correlated to the severity requirements of the Social Security Act and Regulations. Finally, the detailed observations and descriptions in a provider's notes are a vastly superior reflection of an individual's true functional abilities than a shorthand GAF score, and it is those observations upon which my determination is based. I find that above residual functional capacity adequately addresses each of the claimant's impairments.

As for the opinion evidence, great weight has generally been given to the opinions of the claimant's treating physicians, to the reports of the medical testing, and to the reports of the State Agency's consultants, except where lesser weight was given in a particular area as noted elsewhere in this decision. I also note that none of her treating physicians have opined that the claimant is disabled or that her work-related abilities are restricted in any meaningful way not accommodated by the above residual functional capacity.

In sum, the above residual functional capacity is supported by the claimant's medical records, the residual functional capacity assessment prepared by the State Agency's consultant as modified by the claimant's subjective statements to the extent deemed credible, and my thorough review of the record as a whole.

Tr. 19-20.

Further, Plaintiff's subjective claims appear inconsistent with Dr. Newman's treatment

14

notes. During the course of Plaintiff's treatment, Dr. Newman only made minimal objective findings, noting that Plaintiff appeared oriented to time, person, place, had no hallucinations, and had fair judgment and insight (Tr. 390-91, 549-50, 492-94, 510-16, 531-42, 547-49, 544-50). Dr. Newman gives little objective medical data to support Plaintiff's assertion that she is disabled, and the Sixth Circuit has stated that a treating physician's opinion is not entitled to deference when the opinion is based on claimant's subjective complaints rather than objective medical data. *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156 (6th Cir. 2009).

Plaintiff asserts that the Commissioner's decision of ascribing to the Plaintiff a residual functional capacity to perform light work is inconsistent with the Plaintiff's GAF of 40 (Tr. 390-91, 492-94, 510-16, 531-42).[2] However, as seen from his administrative decision, the Commissioner has declined to be bound by GAF scores in Social Security disability cases and has indicated that the scale used for GAF scores "does not have a direct correlation to the severity requirements of the mental disorders listing." *See* 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000). The Commissioner states that "because GAF scores are not based on standardized norms . . . they are neither inherently reliable evaluations nor are they intended to be used as a controlling evidence." (Tr. 20). In this case, Dr. Newman routinely assessed the Plaintiff a GAF of 40. Although a GAF of 40 is a score "indicative of more extreme symptoms," the ALJ stated that Dr. Newman's GAF assessment was only given some weight "because it is

---

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual-IV-Text Revision 34 (2000) (DSM-IV-TR).

15

not consistent with the treatment notes or the opinion statement." (Tr. 20). Despite the GAF of 40, Dr. Newman conducted an assessment of mental limitations in which the Plaintiff was noted as having good-fair ability in the majority of the areas (Tr. 536). Plaintiff only registered "poor" ability in adapting to work-related stress; however, the ALJ states that such finding was accounted for in the residual functional capacity as well as the overall assessment in Plaintiff's treatment notes (Tr. 19-20). The ALJ also asserts that his assessment of Plaintiff's symptoms "reflects the statements in these notes that the claimant is 'doing fine,' has generally fair mood through decreased concentration, and is improving on medication." (Tr. 20).

Other supporting evidence relied on by the ALJ included the State Agency's consultant's opinions (Tr. 20). On July 20, 2009, Larry W. Welch, Ed. D. completed a Mental Residual Functional Capacity Assessment and prepared a Psychiatric Review Technique (Tr. 470-487). In the summary conclusions section of the Functional Capacity Assessment, as to Understanding and Memory, he found Plaintiff not significantly limited in two areas and moderately limited in one. As to sustained concentration and persistence he found Plaintiff not significantly limited in two areas and moderately limited in six. As to Social Interaction, his summary conclusion was no significant limitation in two areas, moderately limited in two areas and markedly limited in the ability to interact appropriately with the general public. As to Adaptation his summary conclusion was not significantly limited in three areas and moderately limited in one. In his functional capacity assessment as to Understanding and Memory and Sustained Concentration and Persistence he concluded Plaintiff was able to understand, remember and complete detailed tasks on a regular and continual basis with occasional difficulty sustaining concentration, persistence and pace. As to Social Interaction he found Plaintiff able to interact with small

16

group, 1:1 and occasional or superficial, not continual general public interaction. No major problems with supervisors or coworkers anticipated. Finally, as to Adaptation he found Plaintiff able to adapt to routine, not frequent or fast-paced change. Can avoid major hazards and take most transportation independently, able to set and carry out most long-range goals with only occasional assistance (Tr. 470-473). In assessing the degree of functional limitation he found Plaintiff to have mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulty in maintaining concentration, persistence or pace (Tr. 484). This assessment recognizes Plaintiff to have some limitations but I conclude it generally supports the limitations imposed by the ALJ.

In a July 24, 2009 DDS Medical Consultant Analysis, Dr. Joe G. Allison concludes Plaintiffs physical impairments to be not severe, singly or combined (Tr. 488-491). This opinion also supports the ALJ's conclusion.

The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Warner*, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

17

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    (1) The plaintiff's motion for judgment on the pleadings (Doc. 10) be DENIED.

    (2) The defendant's motion for summary judgment (Doc. 12) be GRANTED.

    (3) The case be DISMISSED. [3]

    S/*William B. Mitchell Carter*
    UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).